UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------
IN RE:                                          )
                                                )
KAREN J. JACOBSON,                              )    CASE NO.   14-20452(ASD)
                                                )
         DEBTOR.                                )    CHAPTER  7
---------------------------------------------------
                                                )
KAREN J. JACOBSON,                              )
                                                )
         PLAINTIFF,                             )
                                                )
vs.                                             )    ADV. PRO. NO. 14-2023
                                                )
A1Z7, LLC,                                      )
                                                )
         DEFENDANT.                             )    RE: ADV. ECF NO. 15
---------------------------------------------------

**MEMORANDUM OF DECISION AND ORDER
GRANTING MOTION TO DISMISS**

ALBERT S. DABROWSKI, UNITED STATES BANKRUPTCY JUDGE

**I.  INTRODUCTION**

The above-captioned matter came before the Court upon the Defendant A1Z7, LLC's (hereinafter, "A1Z7") *Motion to Dismiss Adversary Complaint Pursuant to Fed. R. Bankr. P. 7012(b)(6)* (hereinafter, the "Motion"), Adv. ECF No. 15,[1] in response to a *Complaint to Avoid Fraudulent Conveyance Under 11 U.S.C. §§522, 548 and 550* (hereinafter, the "Complaint"), filed by the Debtor-Plaintiff, Karen Jacobson (hereinafter, the "Debtor") seeking to avoid as a fraudulent transfer a conveyance of the Debtor's real property located in Coventry, Connecticut through an involuntary public sale by the Town

---

[1] As used herein, "ECF No. _" and "Adv. ECF No. _" refer to pleadings docketed in Bankruptcy Case No. 14-20452 and Adversary Proceeding No. 14-2023, respectively.

of Coventry and a Tax Collector's Deed to A1Z7. Through the Motion, A1Z7 is seeking to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bank. P. 7012(b)(6), on the ground that the Complaint does not state a claim upon which relief can be granted. Because the Court concludes that a tax sale conducted in accordance with Conn. Gen. Stat. §12-155 *et seq*. (hereinafter, the "Tax Collector's Sales Procedure"[2]) conclusively establishes as a matter of law "reasonably equivalent value" within the meaning of Bankruptcy Code §548(a)(1)(B)(i), the sale was not a fraudulent transfer and the Debtor's Complaint must therefore be dismissed.

## II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant matter by virtue of 28 U.S.C. § 1334(b). This Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984 and by the consent of the parties. This is designated as a "core proceeding" under 28 U.S.C. § 157(b)(2)(H).

## III. FACTUAL BACKGROUND

The relevant factual background of this contested matter, as set forth below, is not in dispute for purposes of this Motion.[3]

---

[2] The statutory references in Connecticut General Statutes to tax collector sales of real property have no formal name.

[3] In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011). For the purposes of a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

2

1. The Debtor commenced Case No. 14-20452 by filing a petition for relief under Chapter 13 on March 13, 2014. Molly Whiton was appointed as the Chapter 13 Trustee. On the Debtor's Amended Schedule A - Real Property, ECF No. 32, she listed as property of the bankruptcy estate, real property at 758 Wrights Mill Road, Coventry, Connecticut (hereinafter, the "Property"), describing her interest therein as an "[e]quitable interest for fair market value lost in tax lien sale," which she valued at $190,000. On the Debtor's Amended Schedule B - Personal Property, ECF No. 53, she also listed as assets "excess proceeds from tax sale on 758 Wrights Mill Road, Coventry, CT,"[4] and a "Fraudulent Transfer claim against A1Z7, LLC."

2. Upon the filing by the Debtor on August 28, 2014, of a *Notice of Conversion to Chapter 7 Case*, ECF No. 46, the Court, on August 29, 2014, entered an *Order Upon Conversion of Case Under Chapter 13 to Case Under Chapter 7*, ECF No. 47. Trustee Molly Whiton was removed as Chapter 13 Trustee and Thomas C. Boscarino was appointed as Chapter 7 Trustee (hereinafter, the "Chapter 7 Trustee").

3. The Defendant, A1Z7, is a limited liability company formed in the State of Georgia, with an office and place of business located at 102 Prince Drive, Suite E, Martinez, Georgia 30907.

4. The Debtor has been the owner of the Property for many years.[5]

---

[4] Maria Jacobson, Executrix of the estate of Ishier Jacobson, the Plaintiff's deceased husband's brother, claims an interest in all of those proceeds by virtue of an allegedly unpaid mortgage loan secured by the Property. *See Amended Motion for Relief from Stay* filed November 3, 2014, ECF No. 58.

[5] The decedent estate of the Debtor's husband, Alvin Jacobson, may also have had an interest in the Property but Alvin Jacobson did not file bankruptcy or nor is his estate a party to the adversary proceeding. For that reason, and because the estate's possible interest will not affect the Court's decision in this case, neither Alvin Jacobson nor his estate, will be dealt with further in this proceeding.

5. In April 2013, the Town of Coventry (hereinafter, the "Town") claimed taxes and interest were due and unpaid with respect to the Property for the tax years 2002 through 2012, totaling $74,174.92 (hereinafter, the "Taxes").[6]

6. In June 2013, a public auction took place and A1Z7 purchased the Property from the Town for $200,000.

7. At that time, the fair market value for the Property was approximately $400,000.

8. On or about June 28, 2013, the Town's tax collector issued a Tax Collector's Deed pursuant to Conn. Gen. Stat. §12-157 *et seq.,* in favor of A1Z7 (hereinafter, the "Transfer").

9. The value of the Property at the time of the Transfer exceeded the amount of the Taxes.

10. In connection with the Transfer, the Debtor was provided by law, *see* Conn. Gen. Stat. §12-157(f), with a six-month "redemption" period with respect to the Property, expiring on December 23, 2013.

11. The Debtor failed to redeem the Property within that six-month period and the Tax Collector's Deed was recorded by the Town on the Coventry Land Records on

---

[6]The Debtor has not challenged the tax collection procedures either on the grounds that she did not receive adequate notice of the sale nor that the state statute itself provides inadequate notice required to comport with the *Due Process Clause of the Fourteenth Amendment* to the United States Constitution. In any case, the notices required to be sent to a taxpayer such as the Debtor, both prior to and subsequent to the sale as well as the relevant public notices are clearly sufficient to meet the notice requirements established by the United States Supreme Court in *Jones v. Flowers*, 547 U.S. 220 (2006). *See infra*, pp. 6-9.  Further, in *Oneida Indian Nation of New York v. Madison County and Oneida County, New York*, 665 F.3d 408 (2d Cir. 2011), the United States Court of Appeals for the Second Circuit reviewed a tax sale process employed by Oneida County, similar to the two-step process and noticing procedure employed by the Town here, and found that the notices provided by the County both before the sale and before expiration of the post-sale redemption period to be adequate. *See also, Associates Financial Services of America, Inc. v. Sorensen*, 46 Conn. App. 721, 728 (1997), in which the Connecticut Appellate Court determined that the notice requirements of Conn. Gen. Stat. §12-157(a) satisfied the Due Process Clause of the Fourteenth Amendment.

December 26, 2013, at Volume 1223, Page 1181.  Thereafter, the Town was paid the entirety of its unpaid taxes and the balance of the funds, after said taxes, fees and charges in the amount of $64,440.79 was deposited with the Tolland Superior Court pursuant to Conn. Gen. Stat. §12-157(i)(1)(B), subject to claim by owners and/or encumbrancers.

12.   The purchase by A1Z7 left the Debtor insolvent.  The transfer of the property to A1Z7 was involuntary.

13.   In her Complaint, the Debtor is seeking to have the Court avoid the Transfer as a fraudulent conveyance and either reconvey the Property to the Debtor or enter an order for monetary damages equal to the value of the Property plus interest, less the amount of the Taxes, plus the costs and disbursements of this proceeding.[7]  In response, A1Z7 filed the Motion and a *Memorandum in Support of Motion to Dismiss Adversary Complaint Pursuant to Fed. R. Bankr. P. 7012(b)(6),* Adv. ECF No. 16.  The Debtor has filed in response, *Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss* (hereinafter*, the "Plaintiff's Memorandum"),* Adv. ECF No. 26.  Attached thereto is Affidavit #1, signed by Peter R. Marsele (hereinafter, the "Marsele Affidavit"), a licensed real estate appraiser and assessor for the Town of Bloomfield, Connecticut.  Thereafter, A1Z7 filed *Defendant's Reply to Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss*, Adv. ECF No. 27.  On July 24, 2014, the respective parties appeared before the

---

[7]Because subsequent to the filing of the Complaint the case was converted to Chapter 7 and a Chapter 7 Trustee appointed to represent the interests of the bankruptcy estate (which includes the Property, subject to the Debtor's exemption rights), the respective interests of the parties to the Property or damages have been altered.  A Trustee "is the representative of the estate" and "has capacity to sue and be sued." Bankruptcy Code §323.  Nevertheless, because as explained *infra,* the Court holds that the sale of the property pursuant to a tax sale does not constitute a fraudulent conveyance, the decision herein will not impact the rights of the respective parties.

5

Court through counsel and were heard on the Motion.[8]

## IV.  DISCUSSION

### A.  *Connecticut Tax Collector Sales Procedure*[9]

Connecticut state law grants municipalities and their tax collectors unique remedies to assist in the collection of local property tax revenue.  In relevant part, Connecticut law gives tax collectors several real property execution options, including:

> (a) If any person fails to pay any tax, or fails to pay any water or sanitation charges within thirty days after the due date, the collector or the collector's duly appointed agent shall make personal demand of such person therefor or leave written demand at such person's usual place of abode or deposit in some post office a written demand for such tax *or* such water or sanitation charges, postage prepaid, addressed to such person at such person's last-known place of residence. . . .
>
> (b) After demand has been made in the manner provided in subsection (a) of this section, the collector may . . . (2) enforce by levy and sale any lien upon real estate for any unpaid tax or levy upon and sell such interest of such person in any real estate as exists at the date of the levy for such tax.

Conn. Gen. Stat. §12-155 (2008).  In this case, the tax collector opted to levy and sell the Debtor's Property in order to collect the Taxes.  The contours of the Connecticut Tax Collector Sales Procedure are set out in detail at Conn. Gen. Stat. §12-157, in relevant part, as follows:

> (a) When a collector levies one or more tax warrants on real estate, he shall prepare notices thereof, containing the name of the taxpayer, a legal description of the real property, including the street address, upon which taxes are due, the amount of the tax or taxes due, including any interest and

---

[8]Although the Chapter 7 Trustee has not formally joined in the Complaint as a Plaintiff, either by substitution or addition, he indicated at a hearing before the Court on November 20, 2014, concerning a related matter, that he joined with the Plaintiff in seeking a decision from the Court on the Complaint.

[9]Conn. Gen. Stat. §12-155 *et seq.*, has been amended effective October 1, 2013, in a number of respects, none of which, in the view of the Court, would alter the outcome of this proceeding and neither the Debtor nor A1Z7 has pointed to any changes that would do so.

charges attributable to the property as of the last day of the month immediately preceding the notice, a statement that additional taxes, interest, fees and other charges authorized by law accruing after the last of the month immediately preceding the notice will be added to the amount indicated as due and owing in the notice, and the time and place of sale.  The collector shall post one notice on a signpost in the town where such real estate is situated, if any, or at some other exterior place near the office of the town clerk, which is nearest thereto; one shall be filed in the town clerk's office of such town and such town clerk shall record and index the same as a part of the land records of such town, and one shall be sent by certified mail, return receipt requested, to the taxpayer and each mortgage[e], lienholder and other record encumbrancer of record whose interest will be affected by the sale.  Such posting, filing and mailing shall be done not more than twelve and not less than nine weeks before the time of sale and shall constitute a legal levy of such warrant or warrants upon the real estate referred to in the notice Such collector shall also publish a similar notice for three weeks, at least once each week, in a newspaper published in such town, if any, otherwise in a newspaper published in the state having a general circulation in such town. The first notice shall be published beginning not more than twelve and not less than nine weeks before the time of sale and the last shall be published not more than four weeks nor less than two weeks before such sale. He shall also send by certified mail, return receipt requested, to the delinquent taxpayer and to each mortgagee, lienholder and other record encumbrancer whose interest in such property will be affected by such sale, a similar notice which shall not be required to list information pertaining to properties in which the person to whom the notice is directed has no interest. The notice shall be sent at least twice, the first not more than eight nor less than five weeks before such sale and the last not more than four weeks nor less than two weeks before such sale. The notice shall be addressed to his place of residence, if known to the collector, or to the address or the agent of such person, to which such person has requested that tax bills be sent. If there is no address of such person, or if no such agent is given in the records of such town, the notice shall be sent to the place where such person regularly conducts business or other address as the collector believes will give notice of the levy and sale.

* * * *

(c) At the time and place stated in such notices . . . such collector (1) may sell at public auction to the highest bidder all of said real property, to pay the taxes with the interest, fees and other charges allowed by law . . . .

(d) The collector shall post, at the time and place of the sale, a written notice stating the amount of all taxes, interest, fees and other charges authorized by law with respect to each property to be sold. The tax collector may publish

or announce any rules for the orderly conduct of the auction and the making of payment by successful bidders which are not inconsistent with the requirements of law. The tax collector or the municipality may retain the services of auctioneers, clerks and other persons to assist the tax collector in the conduct of the sale and the cost of such persons paid for their services shall be added to the taxes due from the delinquent taxpayer. If more than one property is sold, the tax collector shall apportion all shared costs equally among all the properties.

(e) Within two weeks after such sale, the collector shall execute a deed thereof to the purchaser . . . and shall lodge the same in the office of the town clerk of such town, where it shall remain unrecorded six months from the date of such sale.

(f) Within sixty days after such sale, the collector shall cause to be published in a newspaper having a daily general circulation in the town in which the real property is located, and shall send by certified mail, return receipt requested, to the delinquent taxpayer and each mortgagee, lienholder and other record encumbrancer whose interest in such property is affected by such sale, a notice stating the date of the sale, the name and address of the purchaser, the amount the purchaser paid for the property and the date the redemption period will expire. The notice shall include a statement that if redemption does not take place by the date stated and in the manner provided by law, the delinquent taxpayer, and all mortgagees, lienholders and other record encumbrancers who have received actual or constructive notice of such sale as provided by law, that their respective titles, mortgages, liens and other encumbrances in such property shall be extinguished. Not later than six months after the date of the sale . . . if the delinquent taxpayer, mortgagee, lienholder or other record encumbrancer whose interest in the property will be affected by such sale, pays or tenders to the collector, the amount of taxes, interest and charges which were due and owing at the time of the sale together with interest on the total purchase price paid by the purchaser at the rate of eighteen per cent per annum from the date of such sale, such deed, executed pursuant to subsection (e) of this section, shall be delivered to the collector by the town clerk for cancellation and the collector shall provide a certificate of satisfaction to the person paying or tendering the money who, if not the person whose primary duty it was to pay the tax or taxes, shall have a claim against the person whose primary duty it was to pay such tax or taxes for the amount so paid, and may add the same to any claim for which he has security upon the property sold, provided the certificate of satisfaction is recorded on the land records but the interests of other persons in the property shall not be affected. Within ten days of receipt of such amounts in redemption of the levied property, the collector shall notify the purchaser by certified mail, return receipt requested, that the property has been redeemed and shall tender such payment . . . to the purchaser. If the

purchase money and interest are not paid within such redemption period, the deed shall be recorded and have full effect.

* * * *

(I) (1) If the sale realizes an amount in excess of the amount needed to pay all delinquent taxes, interest, penalties, fees, and costs, the amount of the excess shall be held in an interest-bearing escrow account separate from all other accounts of the municipality. (A) If the property is redeemed prior to the expiration of the redemption period, the amount held in escrow shall, within ten days of the tax collector receiving notice of redemption, be turned over to the purchaser. Any interest earned shall be the property of the municipality. (B) If the property is not redeemed in the redemption period, the amount held in escrow may be used to pay the delinquent taxes, interest, penalties, fees and costs on the same or any other property of the taxpayer, including personal property and motor vehicles. In the case of subparagraph (B) of this subdivision, the tax collector shall, within ten days of the expiration of the redemption period, pay to the clerk of the court for the judicial district in which the property is located the amount held in escrow remaining after paying the delinquent taxes, interest, fees, penalties and costs owed by the taxpayer to the municipality. The tax collector shall, within five days of the payment, provide notice to the delinquent taxpayer, any mortgagee, lienholder, or other encumbrancer of record whose interest in such property is choate and is affected by the sale, by certified mail, return receipt requested of the name and address of the court to which the moneys were paid, the person's right to file an application with the court for return of said money, and the amount of money paid to the court.

(2) If the tax collector pays to the court any moneys pursuant to subparagraph (B) of subdivision (1) of this subsection, the delinquent taxpayer, any mortgagee, lienholder or other encumbrancer whose interest in such property is affected by the sale may, within ninety days of the date the tax collector paid the moneys to the court, file an application with the court for return of the proceeds. Any person may make an application for payment of moneys deposited in court as provided for in this subsection to the superior court for the judicial district in which the property that is the subject of the proceedings referred to is located, or if said court is not in session to any judge thereof, for a determination of the equity of the parties having an interest in such moneys. . . .

Conn. Gen. Stat. §12-157 (2008).

In accordance with the above, following the auction of the Debtor's property under

Conn. Gen. Stat. §12-157(c), and in consideration of A1Z7's payment of the auction

purchase price, the tax collector conveyed the entirety of the Debtor's interest in the subject property to A1Z7 by Tax Collector's Deed, in accordance with Conn. Gen. Stat. §12-157(e). The Tax Collector's Deed was subject to cancellation, but *only* if the subject property was timely redeemed through payment of the amounts required by Conn. Gen. Stat. §12-157(f). Accordingly, although at that time conveyance of the Property to A1Z7 did not deprive the Debtor of *all* right and interest in her Property, it did strip her of fee simple interest, and left her holding a bare redemption interest. However, because the Debtor thereafter failed to exercise her redemption rights by the date set forth in the notice sent to her in accordance with Conn. Gen. Stat. §12-157(f), the Tax Collector's Deed was recorded, and full title to the Property vested in A1Z7.

B.   *Whether a Sale Conducted in Accordance With the Connecticut Tax Collector Sales Procedure, Conn. Gen. Stat. §12-155 Et Seq., May Be Avoided As a Fraudulent Transfer*

Bankruptcy Code §548 provides in relevant part[10] that:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> * * * *
>
> (B)(I) received less than a *reasonably equivalent value* in exchange for such transfer or obligation; and (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation. . . .

(Emphasis added).

---

[10] The *Complaint and Plaintiff's Memorandum* fail to specify which sub-section of §548 she believes is applicable here. Based upon the facts as alleged, the Court surmises that she is claiming a constructive fraudulent transfer to have occurred.

In the present case, the Property was transferred to A1Z7 within two years before the filing of the bankruptcy and, for purposes of the Motion, it is determined that the Debtor was insolvent when the Transfer occurred or became insolvent as the result of the Transfer. The Debtor claims the Transfer is avoidable because the non-judicial nature of the proceeding does not provide the framework for a sale to be conducted that affords the Debtor the opportunity to receive a "reasonably equivalent value" for the Property. As evidence, the Debtor points out the fact that the Property was sold for approximately one half of its value.[11]

In support of her position, the Debtor relies most heavily on United States Bankruptcy Judge Robert L. Krechevsky's decision in *Wentworth v. Town of Acton (In re Wentworth),* 221 B.R. 316 (Bankr. D. Conn. 1998), in which a tax sale was conducted by the Town of Acton, Maine, in accordance with that state's tax forfeiture procedure and was found by the court not to produce a sale price that provided a "reasonably equivalent value" within the meaning of §548 and therefore, was a fraudulent transfer.[12] A1Z7's principal

---

[11] In the Marsele Affidavit, he valued the Property at $390,000 as of the date of the auction.

[12] The other two cases heavily relied upon by the Debtor, *In re Herkimer Forest Products Corp.*, No. 04-90148, 2005 WL 6237559 *1 (Bankr. N.D.N.Y. July 26, 2005) and *Clinton Cty Treasurer v. Wolinsky*, No. cv-1142, 2014 U.S. Dist. LEXIS 70839 *1 (N.D.N.Y. May 23, 2014) in which the courts found the tax collection proceedings to be fraudulent transfers are distinguishable because there, both tax collectors followed New York *in rem* foreclosure procedures that permitted them to take immediate title to the delinquent taxpayers' properties following notice and subsequent failure to pay the taxes by the respective redemption dates. Sales of the properties by public auction could only take place after title had passed and any value the tax collector received at the public auction in excess of the taxes owed was retained for the tax collector's benefit and not the taxpayer's. Interestingly, in the *Wolinsky* case, in which a public sale was held following the transfer of title, the court used the amount realized by the tax collector from the auction as the amount recoverable by the taxpayer as a fraudulent transfer (less taxes owed), rather than what the taxpayer claimed to be the substantially greater assessed value stating, "[t]he Trustee cannot seriously contend that the $42,000 assessment is an accurate estimation of the property's value in light of the fact that the property sold for just $25,500 at public auction only two months later." *Id* at *14-*15.

argument in response is that in *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), the United States Supreme Court held that a foreclosure sale establishes what constitutes "reasonably equivalent value" as long as state law is followed.  Neither arguments are precisely on the mark.

In *In re Wentworth*, 221 B.R. at 319, the court rightly pointed out that in *BFP,* the Supreme Court specifically limited its opinion to mortgage foreclosures of real estate and that "the considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different." *BFP v. Resolution Trust Corp.*, 511 U.S. at 537, n.3. Nevertheless, Judge Krechevsky did not state that the rationale of *BFP* could not be extended to include tax sale procedures adopted by other jurisdictions, but merely that the Court could not do so in the case before it.  Judge Krechevsky noted that "the rationale of the cases extending *BFP* to tax foreclosure sales does not apply to the instant matter because under Maine's foreclosure procedure for foreclosure of tax liens, the property was transferred without the possibility of judicial oversight, without competitive bidding and, without a public sale." *In re Wentworth*, 221 B.R. at 319-320.  However, in Connecticut, unlike in Maine, the Tax Collector Sales Procedure only permits sales to be conducted following repeated newspaper advertisements, public postings and multiple mailings to affected persons followed by a public auction with competitive bidding and sale to the highest bidder. Additional advertising and mailings to affected persons are also mandated following the sale and must contain detailed information about the outcome of the sale as well as the redemption date. And in Connecticut, unlike in other jurisdictions, *see* p.11, fn. 12, i*nfra*, title to the property does not pass until after the sale has taken place and the

redemption period has expired. Further, although there is no judicial oversight throughout the process, recourse to judicial review is possible.[13]

In *Fed. Nat. Mort. Assoc. v. Fitzgerald (In re Fitzgerald)* ("*Fitzgerald I*"), 237 B.R. 252 (Bankr. D. Conn. 1999), United State Bankruptcy Judge Lorraine Murphy Weil also of this District, held that Connecticut's strict foreclosure procedures which do not provide for a public sale of real property are sufficiently dissimilar from mortgage foreclosure by sale that the rationale of *BFP* did not apply.[14] In coming to that conclusion, the court looked to the case of *DeMusis v. Carr (In re Carr),* 40 B.R. 1007 (D. Conn. 1984), a case preceding *BFP* but which the *Fitzgerald I* court still considered good law and persuasive.

In *Carr,* the district court was faced with the question as to whether a properly and non-collusive transfer of property occurring through Connecticut's strict foreclosure procedure established as a matter of law that the transfer was for a "reasonably equivalent value" within the meaning of §548. The district court declined to make that determination, instead holding that it was not the judicial oversight or the statutorily-authorized strict foreclosure procedure that would warrant such a finding but whether the process of sale had the effect of "triggering market forces." "Even in the depressed circumstances of

---

[13] Conn. Gen. Stat. §§12-159 and 12-159a permit challenges to the validity of a Tax Collector's Deed on the grounds that the requirements for a valid sale were not followed, such as the inadequacy of notice, see *Cornelius v. Rosario*, 138 Conn. App. 1 (2012), but potentially, other grounds are available well, *see Singh v. City of Hartford*, 116 Conn. App. 50 (2009) (claim that town should have revealed presence of asbestos prior to tax sale).

[14] This decision was made in the context of a relief from stay proceeding. The decision was reconsidered and reaffirmed in *Chorches v. Fleet Mortgage Corp. (In re Fitzgerald) ("Fitzgerald II")*, 255 B.R. 807 (Bankr. D. Conn. 2000). *But see, Talbot v. Fed. Home Loan Mort. Corp. (In re Talbot)*, 254 B.R. 63 (Bankr. D. Conn. 2000), in which Judge Krechevsky found the value received for property sold pursuant to Connecticut's strict foreclosure procedure as the "reasonably equivalent value" for the interest transferred, decided very shortly before the *Fitzgerald II* decision and with which the *Fitzgerald II* court "respectfully disagre[ed]," 255 B.R. at 814.

13

foreclosure, the procedures of advance notice and bidding and the participation of non-creditors as well as creditors in the public sale help to secure the best price available for the debtor's property." *Carr*, 40 B.R. at 1009. Relying on *Carr,* the *Fitzgerald I* court likewise agreed that "[n]either judicial oversight nor the technical ability of the mortgagor to elect a foreclosure by sale in lieu of strict foreclosure makes up for the absence of an actual public foreclosure sale," 237 B.R. at 266. Thus, the court held that in determining whether the protections of *BFP* apply in a foreclosure-type procedure, the court must evaluate the similarity of that procedure to the foreclosure by sale procedure dealt with in *BFP*.

In *Fitzgerald II*, Judge Weil reconsidered her holding in *Fitzgerald I*, but again found that Connecticut strict foreclosure proceedings are not entitled to a conclusive presumption of "reasonably equivalent value." But this time, Judge Weil focused on a different aspect of the holding in *BFP*, that its decision was "based upon the evidentiary value of the foreclosure sale process itself," emphasizing that a public sale of the debtor's property produces "legitimate evidence" of the property's value at the time of the sale. *Fitzgerald II,* 255 B.R. at 811. More recently, also concerning the conclusive effect of value in a strict foreclosure, this Court stated that "it finds itself in agreement with the disposition and rationale of *Fitzgerald*." *In re Pantani*, 377 B.R. 28, 31 (Bankr. D. Conn. 2007).

Applying the test set forth in *Fitzgerald II*, this Court concludes that the Tax Collector Sales Procedure set forth in Conn. Gen. Stat. §12-155 *et seq*., is sufficiently similar in material respects to Connecticut foreclosure by sale procedures and those described in *BFP*, that the rational of *BFP* is held to apply. While the legal procedures are in some

respects significantly different, each is the same in critical respects – they require advance public notice of the sale to encourage competitive bidding and each allow adequate time for the property owner to exercise the right of redemption. The Tax Collector Sales Procedure produces the same evidence of value as is provided by a foreclosure by sale. *See In re Grandote Country Club Co. Ltd.*, 252 F.3d 1146, 1152 (10th Cir. 2001) ("the decisive factor in determining whether a transfer pursuant to a tax sale constitutes "reasonably equivalent value" is a state's procedure for tax sales, in particular, statutes requiring that tax sales take place publicly under a competitive bidding procedure"); *see also In re T.F. Stone Co. (In Re T.F. Stone Co.)*, 72 F.3d 466, 470 (5th Cir. 1995) ("the *BFP* Court's analysis of §548 expressly eschewed any consideration of the substantive value received in a forced-sale context and instead pinned the validity of the transfer on whether the forced sale was non-collusive and conducted in compliance with state law); *Washington v. County of King William (In re Washington),* 232 B.R. 340, 344 (Bankr. E.D. Va 1999) ("the court concludes as a general matter that the standards for reasonably equivalent value developed by the Supreme Court in *BFP* apply with equal force in the context of a judicial tax sale conducted in accordance with Virginia law"); *McGrath v. Simon (In re McGrath)*, 170 B.R. 78, 81-82 (Bankr. D. N.J. 1994) (procedures do not need to be exactly the same to offer similar protections).

The Debtor relies heavily on the difference between the sale price and appraised value of the Property. However, as noted in *BFP* with respect to mortgage foreclosures and, in this Court's view, equally applicable to the Connecticut Tax Collector Sales Procedure:

> [M]arket value, as it is commonly understood, has no applicability in the forced-sale context; indeed, it is the very *antithesis* of forced-sale value."The market value of . . . a piece of property is the price which it might be expected to bring if offered for sale in a fair market; not the price which might be obtained on a sale at public auction or a sale forced by the necessities of the owner, but such a price as would be fixed by negotiation and mutual agreement, after ample time to find a purchaser, as between a vendor who is willing (but not compelled) to sell and a purchaser who desires to buy but is not compelled to take the particular . . . piece of property." Black's Law Dictionary 971 (6th ed. 1990). In short, "fair market value" presumes market conditions that, by definition, simply do not obtain in the context of a forced sale.[15]

*BFP v. Resolution Trust Corp.,* 511 U.S. at 537-538.

The Debtor also relies on the Marsale Affidavit to support her argument that the Tax Collector Sales Procedure in Connecticut is not designed to assist the homeowner in achieving a fair price for property but just to expedite the collection of past due taxes for the towns so that usually there is not a sufficient market interest to drive the price beyond what a municipality is owed.  However, the actual facts in this case belie that assertion – although the Complaint represents the outstanding tax to have been $74,174.92, the Property was sold for $200,000, two and one half time the amount of the taxes.  Further, while the Marsale Affidavit indicates that Mr. Marsale has prepared very many appraisals in Connecticut and has had long experience as the assessor for the town of Bloomfield, it does not describe how many, if any, Tax Collector Sales Procedures he has personally been involved with or the evidentiary basis for his conclusion that poorer results are obtained as compared to a foreclosure by sale proceeding.  Thus, the Court does not consider the Marsale Affidavit as having "facial plausibility" in the context of a motion to

---

[15]In *BFP,* the property at issue sold for $433,000 although the homeowner alleged that the property was worth $725,000.

dismiss,[16] and cannot not rely on his representations.[17]

## V. SUMMARY AND CONCLUSION

The Connecticut Tax Collector Sales Procedure has been authorized by statute in various iterations for well over a hundred years. As recognized by the Supreme Court in *BFP,* 511 U.S. at 539, "[a]bsent a clear statutory requirement to the contrary, we must assume the validity of this state-law regulatory background and take due account of its effect. 'The existence and force and function of established institutions of local government are always in the consciousness of lawmakers and, while their weight may vary, they may never be completely overlooked in the task of interpretation (citations omitted)'". Application of that reasoning applies as forcefully to public sales conducted pursuant to the Tax Collector Sales Procedure as it does to foreclosure sales.

For the reasons stated herein the Court has concluded and determines that the price paid by A1Z7 for the purchase of the Debtor's Property is entitled to a conclusive presumption of "reasonably equivalent value" within the meaning of Bankruptcy Code §548(a)(1)(B)(i).

---

[16] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face" (citations omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense (citation omitted). *Id.* at 679.

[17] In disagreeing with the *Fitzgerald I* decision and holding that *BFP* was controlling in the context of Connecticut's strict foreclosure law, the court in *In re Talbot*, 254 B.R. at 69, focused on the Supreme Court's recognition in *BFP* of the role of states in defining the "value" of property in the foreclosure context, including its statement that "for 400 years, the common law recognized as 'black letter law that mere inadequacy' of the amount received by a mortgagor relative to a property's fair market value provided no basis for setting the transfer aside under fraudulent conveyance law, despite the 'draconian consequences of strict foreclosure. . . *BFP*, 511 U.S. at 541.'"

## VI. ORDER

In accordance with the above,

**IT IS HEREBY ORDERED** that the *Motion to Dismiss Adversary Complaint Pursuant to Fed. R. Bankr. P. 7012(b)(6)*, Adv. ECF No. 15, filed by A1Z7 is **GRANTED,** and

**IT IS FURTHER ORDERED** that the Complaint (Adv. Pro. No. 14-2023) is **DISMISSED**.

Dated: November 25, 2014                                                                BY THE COURT

Albert S. Dabrowski
United States Bankruptcy Judge